Patrick Collins
Michael J. Healy
FARRELL FRITZ, P.C.
1320 RXR Plaza
Uniondale, New York 11556-1320
Tel:    (516) 227-0700
Fax:    (516) 227-0777

*Attorneys for 15024 Emmut Properties, LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
In re:                                    :      Case No. 1-11-43782-(cec)
                                          :
ROOSEVELT AVENUE CORP.,                   :      Chapter 11
                                          :
                        Debtor.           :
------------------------------------------------------------x
```

### MOTION FOR AN ORDER DISMISSING CHAPTER 11 CASE OR, ALTERNATIVELY, GRANTING RELIEF FROM THE AUTOMATIC STAY

15024 Emmut Properties, LLC ("Emmut"), by its attorneys, Farrell Fritz P.C., hereby moves for an order (a) pursuant to 11 U.S.C. § 1112(b), dismissing this Chapter 11 case for cause, or alternatively, (b) pursuant to 11 U.S.C. § 362(d)(2), granting Emmut relief from the automatic stay to permit Emmut to continue and conclude the prosecution of its action, pending in the Supreme Court, State of New York, Queens County, to foreclose its first priority mortgage lien encumbering the real property owned by the Chapter 11 debtor, and to otherwise enforce all of its rights and remedies under its mortgage and related loan documentation and under applicable law. In support of its motion, Emmut states as follows:

### Preliminary Statement

1.      This case is an abuse of Chapter 11 of the Bankruptcy Code.

2.      The chapter 11 debtor, Roosevelt Avenue Corp. (the "Debtor"), concedes that the single parcel of real estate it owns—a 3 story commercial mall located in Flushing, New York,

generating over $124,500 in monthly rental income—constitutes "single asset real estate" within the meaning of Section 101(51B) of the Bankruptcy Code.

3.    Emmut is the single largest creditor of the Debtor, holding a mortgage, in the original principal amount of $14 million, encumbering this property as a valid first mortgage lien. In a pending state court action to foreclosure this mortgage, Emmut obtained a Judgment of Foreclosure and Sale. On the eve of Emmut's foreclosure auction sale, scheduled for May 6, 2011, the Debtor filed its chapter 11 petition on May 4, 2011.

4.    The Debtor has no employees and has no access to the cash flow from the rents generated by property encumbered by Emmut's mortgage. For two and a half years before the filing of Debtor's chapter 11 petition, a state court receiver, appointed in Emmut's pending state court foreclosure action, has been operating and managing the Debtor's single asset real estate, including collecting the rents generated by the property. On May 25, 2011, this Court granted Emmut's motion (the "Motion to Retain Receiver") [Doc. No. 15] to permit the state court receiver for the property to remain in possession of the property notwithstanding the Debtor's commencement of this bankruptcy case and to continue to perform the duties she undertook in connection with Emmut's foreclosure action.

5.    As detailed below, this case is the classic example of a bad faith filing, driven by purposes other than the legitimate aims and objectives of the Bankruptcy Code.

6.    Accordingly, Emmut moves for an order (i) dismissing the Debtor's Chapter 11 case for cause, pursuant to Section 1112(b) of the Bankruptcy Code. Alternatively, because the Debtor acknowledges that is has no equity in its property and because that property is not, as a matter of law, necessary for an effective reorganization Emmut seeks relief from the automatic stay, under Section 362(d)(2) of the Bankruptcy Code, to allow Emmut to continue and conclude

the prosecution of its pending action to foreclose its first priority mortgage lien, and to otherwise enforce all of its right and remedies under its mortgage and related loan documentation and under applicable law.[1]

### Background

7.     On May 4, 2011 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York.

8.     The Debtor is a New York corporation. Its principal is Daniel Lee, who is the president and the 100% shareholder of the Debtor.

9.     The Debtor's owns certain commercial property, located at 150-24 Northern Boulevard, Flushing, New York, improved by a three story commercial mall known as "Korea Village" (the "Property" or the "Mortgaged Property"). Currently occupied by 14 tenants, the Property generates approximately $124,500 per month in rental income, or approximately $1,494,000 per year. There are two vacancies. The Property is the only real estate owned by the Debtor.

10.     At the time the Debtor executed and delivered the $14 million mortgage held by Emmut encumbering the Property, the Debtor was the sole owner of the Property. The Debtor, however, subsequently conveyed a 15% tenants-in-common ownership interest in the Mortgaged

---

[1]   In making this Emmut reserves the right to seek relief under Section 362(d)(3) of the Bankruptcy Code, as well as all of its other rights, remedies and claims under the Bankruptcy Code, the Mortgage Documents, the Judgment of Foreclosure and Sale and applicable law.  The fact that this is a single asset real estate case, as defined by Section 101(51B) of the Bankruptcy Code, does not mean Emmut is restricted to Section 362(d)(3) for relief from the stay. *See In re 234-6 West 22nd Street*, 214 B.R. 751, 755 (Bankr. S.D.N.Y. 1997) (Section 362(d)(3) does not preclude relief available under other subsections of Section 362(d)); *In re 68 West 127 Street*, 285 B.R. 838, 842 n5 (Bankr. S.D.N.Y. 2002) (same); *In re Duvar Apt.*, 205 B.R. 196, 200 (BAP 9th Cir. 1996) ("A bankruptcy court has authority to grant relief from the stay for cause in a single asset real estate case before the expiration of 362(d)(3)'s ninety day period."); *In re Pacific Rim Investments*, 243 B.R. 768, 772 (D. Colo. 2000) (rejecting argument that 362(d)(3) is exclusive provision by which relief from stay can be obtained for single asset real estate cases).

Property to an entity called Grace Properties Holdings LLC, a tenant that operates a combined restaurant and catering hall at the Property.

11.     In its Schedule D‑Creditors Holding Secured Claims to its Voluntary Petition the Debtor estimates that the Property has a value of $12 million, but states that "the Debtor has not determined the value of its 85% tenants in common interest."

**The First Mortgage Held by Emmut Encumbering the Debtor's Property**

12.     Emmut is the owner and holder of a mortgage loan note dated September 19, 2005 (the "Note"), in the original principal amount of $14 million, plus interest and other charges thereon (the "Indebtedness"), made by the Debtor, as obligor, in favor of Intervest National Bank ("INB"), to evidence the Debtor's obligation to repay a loan made by INB to the Debtor in the original principal amount of $14 million.[2] (A copy of the Note is annexed hereto as Exhibit "1.")

13.     The Note is secured by a mortgage dated September 14, 2005 (the "Mortgage"), made by the Debtor, as mortgagor, in favor of INB, as mortgagee.  (A copy of the Mortgage is annexed hereto as Exhibit "2.")

14.     Under the Mortgage, the Debtor granted to INB a first priority mortgage lien on the Mortgaged Property, and in certain of its other assets and property, including but not limited to, all leases, rents and other cash generated by the Mortgaged Property.[3] The Mortgage was duly recorded in the Office of the City Register for the County of Queens against the Mortgaged Property, in CRFN 2005000561882, on October 7, 2005.[4]

---

[2] The underlying relevant facts are attested to in the accompanying Declaration of John Young, a member of Emmut.  Additional details pertaining to this case are set in the Motion to Retain Receiver [Doc. No. 15].
[3] Section 21 of the Mortgage (Exhibit "2'), entitled "Assignment of Leases and Rents," contains the operative assignment of rents language.
[4] Under a Guaranty Agreement dated September 19, 2005, the Debtor's president and sole shareholder, Daniel Lee,

**The State Court Foreclosure Action**

15.    On September 9, 2008, because of the occurrences of numerous events of default by the Debtor under the Note and the Mortgage (collectively, the "Mortgage Documents"), INB commenced an action in the Supreme Court, State of New York, County of Queens, styled *Intervest National Bank v. Roosevelt Avenue Corp, Daniel Lee, et al*, Index No. 22488/08 (the "Foreclosure Action"), seeking to foreclose the Mortgage. (A copy of the underlying state court foreclosure complaint is annexed as Exhibit "3.")

16.    At the time the Debtor filed its Chapter 11 petition, the Foreclosure Action was being prosecuted by Emmut, which had succeeded to all of INB's rights under the Mortgage Documents and as party plaintiff in the Foreclosure Action when Emmut purchased the Mortgage Documents from INB's assignee.

**The State Court Receiver**

17.    Shortly after commencing the Foreclosure Action, INB applied to the State Court for the appointment of a receiver to take charge and enter into possession of the Mortgaged Property and to collect the rents, issues and profits of the Mortgaged Premises for the benefit and protection of INB's rights under the Mortgage Documents.

18.    By order dated December 9, 2008 (the "Order Appointing Receiver"), the State Court (Rios, J.) granted INB's application and appointed Sally E. Unger, Esq., as receiver (the "Receiver").

19.    After filing her oath and bond with in the Foreclosure Action, the Receiver entered into possession of the Mortgaged Premises, and undertook to collect the rents, issues and profits of the Mortgaged Premises.

---

absolutely and unconditionally guaranteed the obligations of the Debtor under the Note and Mortgage.

20.     Beginning in December 2008, shortly after her appointment, the Receiver repeatedly sought the turnover from the Debtor, and its principal, Mr. Lee, of the $517,000 in tenant security deposits. *See* Motion to Retain Receiver [Doc. No. 15], at ¶¶ 27-34.

21.     Despite the Receiver's efforts, the Debtor and its principal, Mr. Lee, failed and refused to turn over the $517,000 in tenant security deposits, in violation of Order Appointing Receiver. For this reason, the Receiver filed a motion in the State Court to hold both the Debtor and Mr. Lee in contempt of Court.

**The Debtor and its Principal are Held in Contempt by the State Court**

22.     As detailed in the Motion to Retain Receiver [Doc. No. 15], the State Court (Rios, J.) held both the Debtor and Mr. Lee in contempt of Court, finding that there was "an unequivocal mandate of this Court [in the Order Appointing Receiver] requiring defendants to turn over all security deposits and *there is clear and convincing evidence on the record that the defendants['] calculated refusal to turn over the security deposits has impeded the receiver's ability to perform her duties and responsibilities in order to maintain [the Mortgaged Property] for the benefit of the plaintiff*." *See* Motion to Retain Receiver [Doc. No. 15], at ¶36 (emphasis added).

**The State Court Issues an Order to Arrest the Debtor's Principal**

23.     On December 15, 2009, the State Court issued a Judgment and Order of Contempt, declaring that the contempt of the Debtor and its principal, Mr. Lee, was "*calculated to, and actually did defeat, impair and prejudice the rights and remedies of the Receiver*". *See* Motion to Retain Receiver [Doc. No. 15], at ¶¶ 38-39 (emphasis added).

24.    The Judgment and Order of Contempt issued by the State Court specifically provided that, unless the Debtor's principal, Mr. Lee, purged himself of his contempt sanction by paying the $1,000 judicial fine and by turning over to the Receiver the $517,000 in tenant security deposits within 10 days of service of a certified copy of the Judgment and Order of Contempt "*the Sheriff of any County wherein Defendant Daniel Lee may be found, is directed to arrest said Defendant Daniel Lee and produce him before the Justice presiding at IAS Part 8 of this Court*." *See* Motion to Retain Receiver [Doc. No. 15], at ¶ 40 (emphasis added).

## The Debtor's Principal is a Fugitive from Justice

25.    The Debtor's principal failed to purge himself of his contempt, neither paying the court-imposed fine nor turning over to the Receiver the $517,000 in tenant security deposits.

26.    For months following the State Court's issuance of its Judgment and Order of Contempt, the Receiver sought to locate Mr. Lee so he could be arrested for his un-purged contempt.

27.    Efforts to locate Mr. Lee, however, proved unavailing, and in the nearly year and a half since the issuance of the Judgment and Order of Contempt, he has successfully avoided arrest. (Mr. Lee did not even appear on behalf of the Debtor to testify at the Section 341 meeting of creditors scheduled for June 2, 2011, apparently out of fear he would be arrested if he did appear. A Mr. Parks, who was described by Debtor's counsel as a "Chief Restructuring Officer" appointed post-petition for the Debtor, appeared for the meeting of creditors with Debtor's counsel on June 2, 2011. The Office for the United States Trustee declined to conduct the meeting of creditors in the absence of Mr. Lee and the meeting was postponed to June 24, 2011.)

**The State Court Issues a Judgment of Foreclosure and Sale**

28.    On September 20, 2010, the State Court issued a Judgment of Foreclosure and Sale in the Foreclosure Action. (A copy of the Judgment of Foreclosure and Sale is annexed as Exhibit "4.")

29.    Under the Judgment of Foreclosure and Sale, the State Court directed the sale of the Mortgage Property to satisfy the outstanding indebtedness owed by the Debtor under the Mortgage Documents, calculated to be $16,859,275.94 as of October 31, 2009, plus costs, expenses and interest accruing from October 31, 2009 as set forth in the Judgment of Foreclosure and Sale.

**The Assignment of the Mortgage Documents to Emmut**

30.    Under an Assignment of Mortgage dated May 21, 2010 (Exhibit "5" hereto), and recorded on June 29, 2010, INB assigned all of its right, title and interest in the Mortgage Documents to VFC Partners 4, LLC ("VFC").

31.    VFC, as INB's assignee, in turn assigned all of its right, title and interest in the Mortgage Documents to Emmut under an Assignment of Mortgage dated March 29, 2011, recorded in Office of the City Register for the County of Queens on April 27, 2011 ("Emmut Assignment of Mortgage"). A copy of the Emmut Assignment of Mortgage is annexed as Exhibit "6." In addition, VFC assigned all of its right, title and interest in the Judgment of Foreclosure and Sale to Emmut under an Assignment of Judgment of Foreclosure and Sale dated March 31, 2011. A copy of the Assignment of Judgment of Foreclosure and Sale is annexed as Exhibit "7."

32.     As a result of the assignment of the Mortgage Documents to Emmut under the Emmut Assignment of Mortgage, Emmut is the owner and holder of the Mortgage Documents, and the State Court Judgment of Foreclosure and Sale, and is entitled to enforce the Mortgage Documents, and the State Court Judgment of Foreclosure and Sale, according to their terms and applicable law.

**A Foreclosure Sale of the Mortgaged Property is Scheduled for May 6, 2011**

33.     Following the assignment of the Mortgage Documents and the State Court Judgment of Foreclosure and Sale to Emmut, the referee appointed to sell the Mortgaged Property under the State Court Judgment of Foreclosure and Sale scheduled a foreclosure auction sale of the Mortgaged Property for May 6, 2011, at 11:00 a.m.

**The Debtor Files its Bankruptcy Petition on May 4, 2011**

34.     On May 4, 2011, two days before the scheduled foreclosure sale of the Mortgaged Property, the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code with this Court.

35.     As of the Petition Date, Emmut was due the sum of $20,702,165.02 under the Mortgage Documents and the Judgment of Foreclosure and Sale.

**This Court Grants Emmut's Motion to Retain the Receiver**

36.     At a hearing conducted on May 25, 2011, this Court granted Emmut's Motion to Retain Receiver [Doc. No. 15] to permit the Receiver appointed for the Property in the Foreclosure Action, to remain in possession of the Property notwithstanding the Debtor's commencement of this bankruptcy case and to continue to perform the duties she undertook in connection with the Foreclosure Action.  A formal order [Doc. No. 28] granting Emmut's Motion to Retain Receiver, *nunc pro tunc* to the Petition Date, was entered on June 17, 2011.

9

37.    On information and belief, the Office of the United States Trustee has not

appointed an Official Committee of Unsecured Creditors in the Debtor's Chapter 11 case.

## Jurisdiction

38.    This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157

and 1334.  The statutory predicates for the relief sought herein are Sections 362 and 1112 of the

Bankruptcy Code and Bankruptcy Rule 4001(a).

## Relief Requested

39.    By this application, Emmut seeks an order (i) dismissing the Debtor's Chapter 11

case for cause, pursuant to Section 1112(b) of the Bankruptcy Code.  Alternatively, in the event

the Court declines to dismiss this case as requested, Emmut seeks relief from the automatic stay,

under Section 362(d)(2) of the Bankruptcy Code, to allow Emmut to continue and conclude the

prosecution of its action, pending in the Supreme Court, State of New York, Queens County, to

foreclose its first priority mortgage lien encumbering the Property, and to otherwise enforce all

of its rights and remedies under its mortgage and related loan documentation and under

applicable law.

## Argument and Authority

## I.

## THE DEBTOR'S PETITION SHOULD BE
## DISMISSED UNDER 11 U.S.C. § 1112(b)

40.    Section 1112(b) of the Bankruptcy Code governs the dismissal of Chapter 11

cases.  It provides, in pertinent part:

> (1) . . . [o]n request of a party in interest, and after notice and a hearing, absent
> unusual circumstances specifically identified by the court that establish that
> the requested conversion or dismissal is not in the best interests of creditors
> and the estate, the court **shall** convert a case under this chapter to a case under

10

> chapter 7 or dismiss a case under this chapter, whichever is in the best
> interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. §1112(b)(emphasis supplied).

41.    Thus, a bankruptcy court may dismiss a Chapter 11 case "for cause" pursuant to Section 1112(b).  Although Section 1112(b) does not explicitly require that cases be filed in "good faith," courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal.  *See, e.g., In re C-TC 9th Avenue Partnership*, 113 F.3d 1304 (2d Cir. 1997); *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994); *In re Little Creek Dev. Co.,* 779 F.2d 1068, 1072 (5th Cir.1986).  "The existence of good faith depends on an amalgam of factors and not upon a specific fact."  *In re Marsch,* 36 F.3d at 828 (*citing In re Arnold*, 806 F.2d 937, 939 (9th Cir.1986)).  The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis.  *Id.*

42.    Bankruptcy courts have broad discretion to dismiss chapter 11 cases for cause.  *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304 (2d Cir. 1997) (affirming dismissal of chapter 11 petition as a bad faith filing); *In re Bridge to Life, Inc.*, 330 B.R. 351 (Bankr. E.D.N.Y. 2005) (denying motion to reconsider dismissal of a Chapter 11 case a bad faith filing); *In re Syndicom Corporation*, 268 B.R. 26 (Bankr. S.D.N.Y. 2001) (finding that debtor lessee of a condominium apartment filed its petition in bad faith warranted dismissal and/or stay relief for "cause"); *In re 234-6 West 22nd Street*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) (dismissing chapter 11 case noting that, where the circumstances require dismissal on bad faith grounds "a judge must not shrink from ordering it").

43.    The courts recognize that a Chapter 11 petition "is not filed in good faith unless it serves a valid reorganizational purpose."  *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999) (*citing In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994)).  Thus, "because the filing of a

Chapter 11 petition merely to obtain tactical litigation advantages is not within 'the legitimate scope of the bankruptcy laws,' courts have typically dismissed Chapter 11 petitions under these circumstances as well." *SGL Carbon*, 200 F.3d at 165 (*quoting In re Marsch*, 36 F.3d at 828); *see also Furness v. Lilienfield*, 35 B.R. 1006, 1013 (D. Md. 1983) ("The bankruptcy provisions are intended to benefit those who are in genuine financial distress.  They are not intended to be used as a mechanism to orchestrate pending litigation").

44.    The Ninth Circuit in *In re Marsch* articulated the relationship between the good faith determination and the dismissal of petitions filed merely for tactical advantage:

> The term "good faith" is somewhat misleading. Though it suggests that the debtor's subjective intent is determinative, this is not the case. Instead, the "good faith" filing requirement encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings. Courts have implied such limitations to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws.  Pursuant to 11 U.S.C. § 1112(b), courts have dismissed cases filed for a variety of tactical reasons unrelated to reorganization.

*In re Marsch*, 36 F.3d at 828 (citations omitted).

45.    To support a finding of a lack of good faith for purposes of dismissing a chapter 11 filing, the courts typically look for both the "objective futility" of any possible reorganization by the debtor and the debtor's "subjective bad faith" in filing its petition.  *See Carolin Corporation v. Miller*, 886 F.2d 693, 694 (4th Cir.1989).  The objective futility standard is designed to ensure that the debtor actually has a potentially viable business in place to protect and rehabilitate.  Lacking this, the chapter 11 has lost is *raison d'etre*.  *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996), *citing In re Little Creek Dev. Co.*, 779 F.2d 1068, 1073 (5th Cir.1986).

46.     In making this assessment, the Second Circuit, in *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304 (2d Cir.1997), identified a number of factors as indicative of a bad faith Chapter 11 filing:

- The debtor has only one asset;

- the debtor has few unsecured creditors whose claims are small in relation to those of secured creditors;

- the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

- the debtor's financial condition is, in essence, a two-party dispute which can be resolved in the pending state foreclosure action;

- the timing of the debtor's filing evidences an intent to delay or frustrate legitimate efforts of the debtor's creditors to enforce their rights;

- the debtor has little or no cash flow;

- the debtor cannot meet current expenses; and

- the debtor has no employees.

*See* 113 F.3d at 1311.

47.     Here, the Debtor's lack of good faith is manifest.  All of the applicable factors identified by the Second Circuit in *C-TC* as evincing bad faith are present in this case, and demonstrate both the objective futility of any possible reorganization by the Debtor and the Debtor's subjective bad faith in filing its petition.  For example:

(1)     The Debtor has only one claimed asset—the Property.

(2)     Emmut is the Debtor's only secured creditor, and holds by far the largest single claim against the Debtor—a $20 million claim arising under the Mortgage. The Debtor has no unsecured trade creditors.  The Debtor's Schedule F- Unsecured Creditors lists only a single unsecured creditor—a $2,500 claim held

by the Environmental Control Board ("ECB"), for an unpaid penalty levied by the ECB. This claim is negligible compared to Emmut's claim under the Mortgage. Except for possible unknown claims that tenants at the Property may have (which the Debtor has not scheduled), the Debtor's only other creditors are the 10 other nominally secured creditors, identified in the Debtor's Schedule D-Secured Creditors, holding unsecured deficiency claims arising from the various liens they hold against the Property, all of which are subordinate to Emmut's secured claim under the Mortgage. Thus, the Debtor's only claimed asset—the Property—is essentially the sole source of the only claims against the Debtor.

(3)     The Debtor's one asset—the Property—is the subject of a foreclosure action—the Foreclosure Action Emmut commenced in September 2008 as a result of the Debtor's default under the Mortgage.

(4)     With the exception of the ECB, all of creditors listed in the Debtor's schedules are parties to the Foreclosure Action, holding liens on the Property subordinate to the Mortgage held by Emmut. The few challenges these creditors raised to Emmut's right to foreclose the Mortgage were all resolved by the State Court in Emmut's favor. The Debtor's financial condition is, in essence, nothing more than a classic two-party dispute which can be resolved in Emmut's through the completion of the pending Foreclosure Action.

(5)     The timing of the Debtor's filing evidences its intent to delay and frustrate legitimate efforts of Emmut, the Debtor's only "in the money" secured creditor, in seeking to enforce Emmut's rights as against the Debtor and the Property. The Receiver—who under this Court's order was permitted to remain

14

in possession of the Property, continuing to operate and manage the Property and to collect the rents generated by the Property—was appointed in the state court action in December 2008, some two and one-half years ago. The Debtor, however, chose to file its Chapter 11 petition on May 4, 2011. This filing date of the Debtor's petition was nearly two and one-half years *after* the State Court appointed the Receiver, *but just two days before* Emmut's scheduled foreclosure sale of the Property on May 6, 2011. The Debtor was facing no other financial pressures from any source, since the Receiver was in possession of the Property, operating and managing it and paying all expenses associated with the Property. Thus, the sequence of events here leaves little doubt that the Debtor strategically timed its bankruptcy filing for the sole purpose of stymieing Emmut's ability to realize the value of its collateral through its scheduled foreclosure sale. Based on these considerations, the Debtor's reasons for filing have little to do with valid attempt to reorganize and everything to do with, instead, an unreasonable tactical effort to thwart and deter the legitimate rights of Emmut.

(6)    The Debtor has absolutely no available cash flow. This is so for the simple reason that the State Court appointed a receiver for the Property in Emmut's pending Foreclosure Action.[5] As explained below, because Emmut took the affirmative step of obtaining the appointment of the Receiver in its Foreclosure Action, the Debtor does not have the right to possess the cash flow from the rents of the Property until the Mortgage is satisfied, and is barred from

---

[5] On May 25, 2011, this Court granted Emmut's Motion to Retain Receiver, excusing the Receiver from complying with the turnover over requirements of Section 543 of the Bankruptcy Code, permitting the Receiver to remain in possession of the Property and to operate and manage the Property and to collect the rents generated by the Property.

using or allocating the cash flow from the rents in any way under any chapter 11 plan. *See In re Loco Realty Corp*, 2009 WL 2883050 at *5-7 (Bankr. S.D.N.Y. 2009) (recognizing that, regardless of whether an assignment of rents is construed as a security interest or an absolute assignment, once a lender takes the affirmative step of obtaining the appointment of a receiver of the rents, the lender acquires the right to possess the rents until the underlying mortgage loan obligation is repaid by the debtor, and the cash flow from the rents cannot be used by the debtor to fund a chapter 11 plan of reorganization); *Soho 25 Retail, LLC*, 2011 WL 1333084 (recognizing that, where lender has taken pre-petition steps to enforce assignment of rents, cash flow from rents do not become property of the estate under Section 541(a) until underlying mortgage is satisfied); *In re Jason Realty, L.P.*, 59 F.3d 423, 431 (3rd Cir. 1995) (holding that rents that do not become property of a debtor's bankruptcy estate "are unavailable for use, allocation or utilization in any plan proposed by [the debtor]").

   (7)    The Debtor has no employees.

48.    Thus, seven of the eight factors identified by the Second Circuit in *C-TC* as evincing a bad faith filing are present here.[6] The presence of these factors here alone is reason enough for dismissing the Debtor's petition for bad faith under Section 1112(b). *See In re C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1311 (2nd Cir.1997) (affirming bankruptcy court's dismissal of Chapter 11 petition as having been filed in bad faith where the similar factors were

---

[6]  The one remaining factor identified by the Second Circuit in *C-TC*—the debtor cannot meet current expenses—is not applicable here because, as noted, the Debtor has *no* expenses (other than, perhaps, legal fees, which are likely covered by the retainer paid counsel), and *no* cash flow as a result of the appointment of the Receiver in the State Court and this Court's subsequent order permitting the Receiver to remain in possession operating and managing the Property.

present); *In re Loco Realty Corp*, 2009 WL 2883050 at *2-7 (Bankr. S.D.N.Y. 2009) (recognizing that dismissal under Section 1112(b), for cause, is appropriate where lender takes the affirmative step of obtaining the appointment of a receiver of the rents, thus precluding the cash flow from the rents from being used by the debtor to fund a chapter 11 plan of reorganization).

49.    The Debtor's conduct underscores its manifest bad faith in this case. The bankruptcy courts are tasked with "vigilantly protecting the integrity of the judicial process and the interests of secured creditors to ensure that reorganization is being sought and that the debtor is no simply gambling with the creditor's money." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 760 (Bankr. S.D.N.Y. 1997), *citing Carolin Corp. v. Miller*, 888 F.2d 693, 705 (4th Cir. 1989). Thus, "bad faith is shown if the purpose of a chapter 11 debtor is to hold a single asset 'hostage' in order to recover its original investment at the creditor's risk." *234-6 West 22nd St. Corp.*, 214 B.R. at 759 (citations omitted). Similarly, "a debtor shows bad faith when it uses bankruptcy protection for risk-free speculation in the single asset." *Id.*

50.    This appears to be precisely what the Debtor is seeking to do here. The Debtor has no employees and no available cash flow,[7] and for two and one-half years it has conducted little if any business while the Receiver has been in possession, managing and operating the Property. If the Debtor ever sought during those two and one-half years to market the Property for sale and obtained any meaningful expressions of interest, or sought to refinance the Mortgage

---

[7]  As noted, because Emmut took the affirmative step of obtaining the appointment of the Receiver in its foreclosure action, as a matter of law the Debtor does not have the right to possess the cash flow from the rents of the Property until the Mortgage is satisfied, and is in fact barred from using or allocating the cash flow from the rents in any way under any chapter 11 plan. *See In re Loco Realty Corp*, 2009 WL 2883050 at *5-7 (Bankr. S.D.N.Y. 2009) (recognizing that, regardless of whether an assignment of rents is construed as a security interest or an absolute assignment, once a lender takes the affirmative step of obtaining the appointment of a receiver of the rents, the lender acquires the right to possess the rents until the underlying mortgage loan obligation is repaid by the debtor, and the cash flow from the rents cannot be used by the debtor to fund a chapter 11 plan of reorganization).

or other debt, the Debtor never made it known to Emmut. Instead, the Debtor focused essentially on seeking to challenge and evade various orders issued by the State court citing the Debtor and its principal, Daniel Lee, for contempt for their failure to turn over to the Receiver $517,000 in tenant security deposits, and in the case of the Debtor's principal, Mr. Lee, to evade the State Court's arrest warrant. Only on the eve of Emmut's foreclosure sale, which would have divested the Debtor of title to the Property, did the Debtor spring into action, filing its chapter 11 petition to thwart the scheduled sale.

51.    Under these circumstances, and with no cash flow from the Property's rents available to the Debtor for use in connection with a chapter 11 plan as a matter of law, the Debtor's resort to bankruptcy protection has little to do with a legitimate intention of reorganizing. Rather, the Debtor's apparent the purpose in filing is, at best, to engage in risk-free speculation in the Property—representing Emmut's collateral and the Debtor's sole asset—in the hope that perhaps the real estate market for its asset might improve. This is not a permissible use of chapter 11. *See 234-6 West 22nd St. Corp.*, 214 B.R. at 759 ("a debtor shows bad faith when it uses bankruptcy protection for risk-free speculation in the single asset").

52.    Finally, the objective futility of any rehabilitation of the Debtor is underscored by Emmut's showing, in Point II-B below, that for purposes of vacating the automatic stay under Section 362(d)(2), the Debtor cannot establish that it has a reasonable prospect for an effective reorganization within a reasonable time because (i) the Debtor's principal and sole shareholder a fugitive from justice, making it unlikely that any legitimate lender would readily extend any meaningful credit to the Debtor, (ii) the Property is subject to a receivership, making the rents from the Property, as a matter of law, unavailable to the Debtor for use, allocation or utilization in any plan proposed by the Debtor, and (iii) without the cash flow from the rents generated from

18

the Property, the Debtor has no source of funding available to use in any plan of reorganization, making the prospect for an effective reorganization within a reasonable time extremely improbable if not outright impossible. *See infra*, at ¶¶ 62-75.

53.    In sum, on the facts here, only one conclusion is permissible concerning the filing of the Debtor's Chapter 11 petition—rehabilitation is objectively futile, and the Debtor filed its petition with no legitimate intention of reorganizing under Chapter 11, employing the bankruptcy process merely as a litigation tactic in what is essentially a two party dispute. Thus, dismissal of this case is warranted under Section 1112(b) as having been filed in bad faith.

## II.

### ALTERNATIVELY, THE AUTOMATIC STAY SHOULD BE VACATED UNDER 11 U.S.C. § 362(d)(2)

54.    Alternatively, if the Court declines to dismiss this case under Section 1112(b), at a minimum Emmut is entitled to relief from the automatic stay, under Section 362(d)(2) of the Bankruptcy Code, to allow Emmut's pending state court foreclosure litigation against the Property to continue to completion.

55.    Under Section 362(d)(2) of the Bankruptcy Code, relief from the automatic stay with respect to an action against property is required where a debtor does not have any equity in the property, and the property is not necessary to an effective reorganization. Section 362(d)(2) reads:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditions such stay-
>
> * * * *
>
> (2) with to a stay of an act against property under subsection (a) of this section, if-
>
>    (A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

56.    Both of the conditions specified by Section 362(d)(2) for relief from stay are satisfied here.

**A.**    ***The Debtor Has No Equity in the Property.***

57.    In determining whether a debtor has equity in property for purposes of Section 362(d)(2), the courts only look to "the difference between the property value and the total amount of liens against it." *In re New Era Co.*, 125 B.R. 725, 728 (S.D.N.Y. 1991); *In re 6200 Ridge, Inc.*, 69 B.R. 837, 842 (Bankr. E.D. Pa. 1987); *see also Stewart v. Gurley,* 745 F.2d 1194, 1195-96 (9th Cir. 1984) ("equity" defined as "the amount or value of a property above the total liens or charges"). [8]  Thus, for purposes of Section 362(d)(2), the Debtor lacks equity in the Property if the sum total of liens secured by the Property exceeds the Property's value. *See In re Leonard*, 151 B.R. 639, 643 (Bankr. N.D.N.Y. 1992).  This is precisely the case.

58.    Here, in the Debtor's Schedule A-Real Property, the Debtor ascribes a value of $12 million to the Property.  And in the Debtor's Schedule D-Creditors Holding Secured Claims, the Debtor acknowledges that the aggregate amount of the liens encumbering the Property totals in excess of $41 million, thus leaving no doubt that the Debtor lacks equity in the Property.

59.    In its Schedule D-Creditors Holding Secured Claims, the Debtor admits that Emmut holds a first position mortgage lien on the Property, and posits that the amount of Emmut's claim under the Mortgage (without deducting the value of the Property) is

---

[8] The "value" of the property for purposes of a Section 362(d)(2) calculation is its market value.  *See* generally *Sutton v. Bank One, Texas, Nat'l Assoc.*, 904 F.2d 327, 329-330 (5th Cir. 1990).

$18,882,392[9]—an amount that, by itself, greatly exceeds the Debtor's stated value of the Property. Even so, on top of the sums owed under the Mortgage held by Emmut, the Debtor also indentifies in its Schedule D-Creditors Holding Secured Claims the following four subordinate mortgages, four judgment liens and two mechanic's liens encumbering the Property, aggregating an additional approximately $21 million in liens against the Property:

- A mortgage held by E.R. Holdings LLC, indentified with a claim in the amount of $3.96 million (without deducting the value of the Property).

- A mortgage held by Richard Sun Jin and Do Young Kim, indentified with a claim in the amount of $9.92 million (without deducting the value of the Property).

- A mortgage held by Grand Pacific Finance, indentified with a claim in the amount of $3.7 million (without deducting the value of the Property).

- A mortgage held by Kyusung Cho and Young Sook Cho, indentified with a claim in the amount of $3 million (without deducting the value of the Property).

- A judgment lien held by 41 Avenue Realty & Management Corp., indentified with a claim in the amount of $2,000,225 (without deducting the value of the Property).

- A judgment lien held by the Environmental Control Board, indentified with a claim in the amount of $47,800 (without deducting the value of the Property).

- A judgment lien held by the New York City Department of Buildings, indentified with a claim in the amount of $15,000 (without deducting the value of the Property).

- A judgment lien held by the New York State Workers Compensation Board, indentified with a claim in the amount of $39,000 (without deducting the value of the Property).

- A mechanic's lien held by the AC Elevator Inc., indentified with a claim in the amount of $52,919 (without deducting the value of the Property).

- A mechanic's lien held by the West End Construction, indentified with a claim in the amount of $125,000 (without deducting the value of the Property).

---

[9] In fact, as of the Petition Date, based on the Judgment of Foreclosure its holds, Emmut was due the sum of $20,702,165.02 under the Mortgage.

60.    Thus, based on the Debtor's own admissions, the Property is subject to liens totaling over $41 million—an amount that vastly exceeds the Property's value of $12 million ascribed by the Debtor.

61.    Accordingly, only one conclusion is permissible on the question of the Debtor's equity in the Property for purposes of Section 362(d)(2): it has none.

**B.**    **_The Property Is Not Necessary For An Effective Reorganization._**

62.    As a matter of law, the Property is also not necessary for an effective reorganize for purposes of Section 362(d)(2).

63.    The courts recognize that it is the burden of a debtor to establish that the collateral at issue is "necessary to an effective reorganization" for purposes of Section 362(d)(2). *See* 11 U.S.C. § 362(g). This burden requires a debtor, in order to avoid a grant of relief from the automatic stay, to prove "that the property is essential for an effective reorganization that is in prospect." *In re Diplomat Elecs. Corp.*, 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988) (quoting *United States Savs. Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988)). The fact that the property in question is a debtor's sole asset does not mean that it is necessary to an effective reorganization within the purview of Section 362(d)(2). *See In re One Times Square Assocs. Ltd. Partnership*, 165 B.R. 773, 775 (S.D.N.Y. 1994), *aff'd*, 41 F.3d 1052 (2d Cir. 1994). What a debtor must prove is that there must be "a reasonable possibility of a successful reorganization within a reasonable time." *Timbers*, 484 U.S. at 376.

64.    There is no prospect for an effective reorganization here for purposes of Section 362(d)(2) for a simple, dispositive reason: the Debtor has no source of funding for a chapter 11 plan of reorganization, making it highly improbable, if not outright impossible, for the Debtor to have "a reasonable possibility of a successful reorganization within a reasonable time."

*1.*    ***The Rents from the Property are Unavailable to the Debtor to Fund a Plan***

65.    "[W]here rents are not property of a [chapter 11] debtor's bankruptcy estate, [the rents] may not be used to fund a plan of reorganization." *In re Loco Realty Corp*, 2009 WL 2883050 at * 6 (Bankr. S.D.N.Y. 2009) (citation omitted); *see also In re Jason Realty, L.P.*, 59 F.3d 423 (3rd Cir. 1995) (rents absolutely assigned to mortgagee do not become property of mortgagor's bankruptcy estate and cannot be used by mortgagor as part of Chapter 11 reorganization); *MacArthur Executive Associates v. State Farm Life Insurance Co.*, 190 B.R. 189 (D.N.J. 1995)

66.    The bankruptcy courts in New York generally recognize that, regardless of whether an assignment of rents is considered an absolute assignment or merely a pledge of additional security, a lender holding an assignment of rents is entitled to possession of the rents if it took sufficient affirmative steps toward asserting its interest prior to the filing of the debtor's bankruptcy petition. *See 641 Ave. of the Ams. Ltd. Partnership v. 641 Assocs.*, 189 B.R. 583, 591 (S.D.N.Y.1995); *In re Soho 25 Retail, LLC*, 2011 WL 1333084 (Bankr. S.D.N.Y. 2011). Affirmative steps include requesting the appointment of a receiver to collect the rents, demanding or taking possession, commencing foreclosure proceedings, or seeking an order for the sequestration of rents. *See United States v. DiGiulio*, No. 95–CV–219S, 1999 U.S. Dist. LEXIS 16606, at *3–4 (W.D.N.Y.1999); *In re Soho 25 Retail, LLC*, 2011 WL 1333084 (Bankr. S.D.N.Y. 2011); *In re Cerrico Realty Corp.*, 127 B.R. 319, 323 (Bankr.E.D.N.Y.1991); *In re Flower City Nursing Home, Inc.*, 38 B.R. 642, 645 (Bankr.W.D.N.Y.1984); *In re Pine Lake Village Apartment Co.*, 17 B.R. 829, 833 (Bankr.S.D.N.Y.1982).

67.    As Judge Gonzalez explained in *In re Loco Realty Corp*, 2009 WL 2883050 (Bankr. S.D.N.Y. 2009), regardless of whether an assignment of rents is construed as a security

interest or an absolute assignment, once the lender takes the affirmative step of obtaining the appointment of a receiver of the rents, the lender acquires the right to possess the rents until the underlying mortgage loan obligation is repaid by the debtor, and the cash flow from the rents cannot be used by the debtor to fund a chapter 11 plan of reorganization. *In re Loco Realty Corp.*, 2009 WL 2883050 at *5-7; *see also In re Soho 25 Retail, LLC*, 2011 WL 1333084 (Bankr. S.D.N.Y. 2011) (recognizing that cash flow from rents do not become property of the estate under Section 541(a) until underlying mortgage is satisfied, if lender has taken pre-petition steps to enforce assignment of rents).[10]

68.    Here, Emmut, as assignee and the owner and holder of the Mortgage Documents, undertook numerous affirmative steps that are—in the words of Judge Lane—"sufficient, as a matter of law, to now enforce its rights to the rents." *In re Soho 25 Retail, LLC*, 2011 WL 1333084 at *7 (Bankr. S.D.N.Y. 2011). Emmut commenced a state court foreclosure action against the Debtor, and in that foreclosure action, as permitted by the Mortgage and New York law, obtained the appointment of the Receiver to collect the rents generated by the Mortgaged Property. *See Id.*

69.    Thus, the Debtor does not have the right to possess the rents of the Property until the Mortgage is satisfied, and is barred as a matter of law from using or allocating the cash flow from the rents in any chapter 11 plan. *See Loco Realty.*, 2009 WL 2883050 at *5-7; *see also Soho 25 Retail, LLC*, 2011 WL 1333084 (recognizing that, where lender has taken pre-petition steps to enforce assignment of rents, cash flow from rents do not become property of the estate under Section 541(a) until underlying mortgage is satisfied); *In re Jason Realty, L.P.*, 59 F.3d

---

[10]  Section 21 of the Mortgage (Exhibit "2'), entitled "Assignment of Leases and Rents," contains the operative assignment of rents language.

24

423, 431 (3rd Cir. 1995) (holding that rents that do not become property of a debtor's bankruptcy estate "are unavailable for use, allocation or utilization in any plan proposed by [the debtor]").

### 2. *The Debtor Has No Apparent Source of Income Available for Use in a Plan*

70.     Without cash flow from the rents generated from the Property, there is no source of funding available to the Debtor for use, allocation or utilization in any plan proposed by the Debtor, making the prospect for an effective reorganization within a reasonable time extremely improbable if not outright impossible.

71.     The Property is the Debtor's sole scheduled asset.  Moreover, the Debtor's Petition and Schedules disclose no income from any source.  This, of course, comes as no surprise since the Property is the Debtor's only asset and the Receiver has been collecting the rents generated by the Property for two and half years.  Given the lack of income to fund any plan proposed by the Debtor, the possibility that the Debtor can propose a feasible plan within a reasonable time is improbable in the extreme.

72.     Reinforcing this improbability is fact that the Debtor's principal and sole shareholder, Daniel Lee, is a fugitive from justice.  As explained in detail in Emmut's Motion to Retain Receiver, based on the failure of the Debtor and Mr. Lee to turnover to the Receiver $517,000 in tenant security deposits, the State Court cited both the Debtor and Mr. Lee for contempt, finding that their contempt was "*calculated to, and actually did defeat, impair and prejudice the rights and remedies of the Receiver.*"  *See* Motion to Retain Receiver [Doc. No. 15], at ¶¶ 38-39 (emphasis added).  The State Court's Judgment and Order of Contempt, issued in December 2009, specifically provided that, unless the Debtor's principal, Mr. Lee, purged himself of his contempt sanction by paying the $1,000 judicial fine and by turning over to the Receiver the $517,000 in tenant security deposits, the Sheriff of any County was directed to

arrest Mr. Lee. He failed to do so, neither paying the court-imposed fine nor turning over to the Receiver the $517,000 in tenant security deposits. He has been a fugitive from justice ever since, making it unlikely that any legitimate lender would readily extend any meaningful credit to the Debtor any time soon. (Mr. Lee did not even appear on behalf of the Debtor to testify at the Section 341 meeting of creditors scheduled for June 2, 2011, apparently out of fear he would be arrested if he did appear.[11])

* * *

73.    Under the circumstances, with the Debtor's principal and sole shareholder a fugitive from justice, with the Property subject to a receivership, and with the Debtor having no right to possess or access the cash flow from the rents of the Property until the Mortgage is satisfied, the Debtor cannot establish that it has a reasonable prospect for an effective reorganization within a reasonable time. The cases permit no other conclusion. *See In re Jason Realty, L.P.*, 59 F.3d 423, 431 (3rd Cir. 1995) (holding that, for purposes of Section 362(d)(2), a debtor has no reasonable prospect for an effective reorganization within a reasonable time where rents generated by the debtor's property did not become property of a debtor's bankruptcy estate and were thus "unavailable for use, allocation or utilization in any plan proposed by [the debtor]"); *MacArthur Executive Associates v. State Farm Life Insurance Co.*, 190 B.R. 189, 195-96 (D.N.J. 1995) (recognizing that, for purposes of Section 362(d)(2), where rents generated by the debtor's property did not become property of a debtor's bankruptcy estate, and thus could not be utilized by the debtor under a chapter 11 plan, the debtor's argument that it can effectively reorganize within a reasonable time "must be rejected").

---

[11] As noted, a Mr. Parks, who was described by Debtor's counsel as a "Chief Restructuring Officer" appointed post-petition for the Debtor, appeared for the meeting of creditors with Debtor's counsel on June 2, 2011. The Office for the United States Trustee declined to conduct the meeting of creditors in the absence of Mr. Lee and the meeting was postponed to June 24, 2011.

74.     Because the Debtor cannot establish that it has a reasonable prospect for an effective reorganization within a reasonable time, the Property is not, as a matter of law, necessary for an effective reorganization for purposes of Section 362(d)(2).

75.     Based on the foregoing, the Debtor has no equity in the Property, and the Property is not necessary for an effective reorganization, thus mandating that Emmut be granted relief from the automatic stay under Section 362(d)(2) as requested.

## CONCLUSION

76.     For the foregoing reasons, Emmut requests that it be granted the relief as requested in its motion, together with such other and further relief as the Court deems just and necessary.

Dated: Uniondale, New York
       June  22, 2011

                        FARRELL FRITZ, P.C.

               By:     /s/ Michael J. Healy
                       Patrick Collins
                       Michael J. Healy
                       1320 RXR Plaza
                       Uniondale, New York 11556-1320
                       Tel:    (516) 227-0700
                       Fax:    (516) 227-0777

                       *Attorneys for 15024 Emmut Properties, LLC*

Interwoven\1849167.8